The regular argument calendar. Your argument first in Auslander v. Murray, 1712. Mr. Snyder Your Honor, it's good morning. Eric Snyder, pro se for the appellant. Distilled to its essence, Your Honor, this appeal's central issue is whether our rights, meaning the rights of appellant under New York law, constitute an adequate remedy warranting dismissal of the bankruptcy case. And in order to determine the adequacy of that state court remedy, this court should consider the two salient facts that are undisputed here. One, that appellant satisfied the requirements of Section 303 of the Bankruptcy Code. That's the section regarding involuntary petitions when filing the involuntary petition. And two, the sale of the apartment in question will yield more, and the district court recognized, significantly more, than if there was simply a sale of appellant's interest in the co-op. Let me ask you about the sale of appellant's interest under state law, if it went to the state. As a practical matter, what would happen? I mean, how do you just sell appellant's interest, but the spouse's interest is not touched, is it? That's correct, Your Honor. If the spouse's interest isn't touched, how can you have a sale? We would argue that you cannot, Your Honor. Somebody could say, okay, well, I'd buy this interest, but they wouldn't have access, presumably, to the apartment. That's correct, Your Honor. And under CPLR 5240, as we set forth in our reply, it is a worthless remedy because not only wouldn't anybody buy it, we couldn't sell it because of the reasons Your Honor just pointed out. So the remedy in state court is no remedy. The remedy in the bankruptcy court, and the reason we filed the involuntary petition, because section 363A to the bankruptcy code in this court's decision. If we were to find in your favor, then there would be another creditor's remedy available under New York law every time there's a situation like this where there's one debtor and one creditor, and the debtor is insolvent, in effect, and then the bankruptcy courts would become just another vehicle for the enforcement of these debts in this situation. No floodgates argument here, Your Honor. Why not? For a couple of reasons. One, as Judge Gerber pointed out in the bankruptcy court decision, the number of involuntary bankruptcy files is less than one hundredth of one percent. Now it is. Correct. But if we ruled in your favor, it could go up. Second, Your Honor, the Homestead exemption under New York law under the opt-out provision is $162,000. This is a unique situation because the amount involved is millions of dollars after the appellee stripped himself of all his assets and left himself with his entirety's interest, admittedly worth many millions of dollars. Third, we have a judgment— $162,000, I don't know what you're—I mean, for most of— This isn't the New York of the 40s. No, I understand that, Your Honor. But lastly, in this case, we have a $19 million judgment and the property involved is also worth millions. This wasn't—we didn't have an opportunity to go into state court because the appellee transferred all his assets out of his possession. This is a very unique set of circumstances. This was litigated to judgment over a five-year period. And because of the Homestead exemption— Counsel, Counsel, why aren't you in a position like many other counsel for judgment creditors or judgment creditors where you just—you have a judgment but you can't collect it? Because, Your Honor— That happens repeatedly. Because, Your Honor, the appellee has an asset. The reason it's not collectible in other cases is because the— Well, the appellee has an asset that is owned as tenants by the entirety with his spouse. This isn't unusual. It's not unusual under New York law or inability to collect. What is unusual is that specifically under the bankruptcy code in this court's decision in Persky and its progeny, we have an absolute right or strike that the trustee in bankruptcy, should the bankruptcy court determine that the trustee meets his burden under the five-par test, could sell the apartment and allow under 363 I and J the non-debtor spouse to have her rights under the property. So there's nothing done yet, by the way, Your Honor, with respect to your point that everyone would run. There's still two things that need to happen. We're simply seeking the right for an entry of an order for relief. The bankruptcy trustee would then, one, have to decide it's in the best interest of the estate to commence an action to sell the property, and, two, satisfy his burden at under 363 H, where there's a benefit and burden calculus that that's been satisfied. Your Honor, we said that in connection with assessing whether a remedy is adequate, that the remedy must be immediate. There's no place, Your Honor, that says— Because your argument is premised on the notion, it seems to me, that because you can't have immediate access, that is, you can't sell the interest in the entirety, that is an inadequate remedy. Is that correct? No, Your Honor. What's your argument? The argument—well, currently, we have a lot better result that we can attain. If the goal under the Bankruptcy Code, which I believe this Court in Chrysler, as well as CSTC v. Weintraub, makes clear, it's not only what Judge Gerber said in the Bankruptcy Court to have central administration for many creditors fighting over assets. It is also, Your Honor, a chance for a creditor to maximize its assets. It is why trustees are appointed. Where have we said that in the context of describing what an adequate remedy is? You did not in this—with respect to what an adequate remedy is. So you're asking us to fashion a new holding in connection with describing or defining what an adequate remedy is. Your Honor, all I'm asking is, the courts have not ruled on this. Bankruptcy, district court, or Second Circuit. But when determining what is— Your Honor, I believe it's unclear. I think we believe— So if it's subject to— I thought he had discretion. I mean, I thought that there was pretty broad discretion under these circumstances. The Bankruptcy Court does have discretion, Your Honor, but this is the only case that we came upon where there was an involuntary bankruptcy petition. The case was not dismissed under Section 303. The case was dismissed under Section 707. Which gives the courts significant discretion. For unenumerated cause. That's correct, Your Honor. So, the unenumerated cause that Judge Gerber found in his eight points, distilled to his essence, is that we had an adequate remedy. I think as Judge Walker just pointed out, that's no remedy. And, Your Honor, it's always possible that— I think Judge Walker was asking a question. No, I apologize. I apologize. The point, what remedy we really do have in the state court, and, Your Honor, anything can happen. It's certainly possible that one spouse could pass before another spouse, that they could sell the property— Could you force the sale of Mr. Murray's interest in the apartment today? We did not. Could you? Could we force a sale? I don't believe we could. I believe we could go— Have you looked into that? We have. And the cases that we came up with, and they're in our reply brief, is that under 5240, the state court could fashion a remedy simply saying, we cannot, we either cannot, as the cases say, until one of the non-debtor spouse passes, or we cannot, because as pointed out, the non-debtor spouse still resides in the property. Again, this is not the end all. The filing of the bankruptcy still requires the bankruptcy court to make a finding that, in balancing the benefits and the burdens, that it's in the best interest of the estate. That is what we're seeking. We're seeking a threshold issue. We satisfied the statute. If you look simply at applying the facts to the law, Your Honors, under 303, it is undisputed that we— Basically, your argument is you satisfied the statute, and she's not left without any rights under the bankruptcy law. She has a right of first refusal. She can get her—after it's sold, her interest gets paid off. You just get a—you can move things along faster this way. Yes, Your Honor, but there's also—and I won't—Judge Gerber specifically was focusing on the effect of the non-debtor spouse and the children, and we are sensitive to that, and so is the bankruptcy code, which codifies that there is a balancing test on the 363H, in particular, H4, which says the court needs to balance the benefits against the burdens of selling the property. So no bankruptcy court would take this issue lightly. We're simply asking for entry of an order for relief to allow the debtor to be adjudicated a bankrupt so that a trustee and a bankruptcy court can make this decision. Thank you very much, Mr. Snyder. Judge Hall, any questions? No, thank you, Judge White. You have reserved two minutes for rebuttal. We'll hear from Mr. Scott. Thank you, Your Honor. Good morning. If it pleases the Court, Brendan Scott, Clay St. Winters, Struthers, Southern, and Stevens, on behalf of the appellee, Matthew Murray. I'd like to start discussing the standard, because Your Honor said raise the issue. The standard is a very broad discretionary standard. When a bankruptcy court determines whether or not to dismiss a case, it is within his discretion, not only to determine whether or not to dismiss, but also to determine what factors to consider in that analysis. And here, the bankruptcy court wrote a very comprehensive, well-reasoned decision, where the Court identified nine factors that it believed supported dismissal. And you would agree with me, the way that I read it, at least, is that the adequacy of the remedy was a central factor. I believe it was one of the factors, yes. It was central, but it was one of nine factors, yes. And is that, how do we assess that? How do we review its determination of the adequacy of the remedy? Well, I think you look, first, the issue is within the discretion of the bankruptcy court to determine whether it is an adequate remedy. Both the bankruptcy court and the district court. Whether is one thing. The question is what? What is an adequate remedy? Right. I mean, that's a question of law, isn't it? It is. And I think here, the adequate remedy. And that would be review de novo. Yes. And I think here, the adequate remedy is the remedy that the New York legislature provided in the CPLR. It provided it a whole host of judgment enforcement provisions. We don't have a situation here where they got a judgment and said, oh, now what do we do? We're at the end of the road. They recorded their judgment. They asserted a lien. They levied. They engaged in post-judgment discovery. Those are all remedies that are available under the CPLR. They got to a certain point in the road, and they decided, well, we don't like the remedies that are left for us under the state law, so we're going to try something else. They've got the right under the CPLR to sell. I feel that the apartment wouldn't be worth much if they couldn't sell the entire apartment. That's one thing. I mean, you know, and secondly, the question is, you know, whether the courts would even permit a sale. Well, that issue actually came up in Ray Persky. There were two debtors. The debtors argued that the creditors could not use 363-H because New York law did not allow the sale because 5240 allowed the courts to fashion relief to prevent the sale. The court there determined that that does not prohibit the sale and said that 363 was available in that situation. The difference there, of course, was that those were voluntary cases where the debtors were seeking a discharge. They were seeking the fresh start, and that goes to the legislative intent of 363-H, which is to balance a situation where a debtor is seeking a fresh start and a discharge of all of its debts against a situation where a creditor is left watching a debtor obtain a discharge while he holds a valuable asset. Those are not the facts here. This debtor did not seek a discharge. This debtor did not seek the protection of the bankruptcy court. The petition creditor did that in an effort to increase its recovery on his judgment. It was very clearly a judgment enforcement tactic. Judge Gerber of the Bankruptcy Court recognized that, and it was one of the points he relied on. There's nothing in 303, though, that prevents an individual creditor from bringing an involuntary petition in the absence of other creditors in order to try and utilize the provisions of the Bankruptcy Code. That's correct, but the courts have added to that and have built in a provision that a single creditor may only commence a case where they are without an adequate remedy, and that brings us back to the adequate remedy. So, again, the Bankruptcy Court and the District Court both determined that the CPLR provided them with an adequate remedy because it does allow for the sale. It does perhaps allow for less of a recovery than the Bankruptcy Code, but that's what the New York Legislature provided for. You mean Judge Gerber was saying that what was done here was, in effect, an attempt to abuse the Bankruptcy Court process. You're not making that argument, are you? Well, we're not making it. We are, actually, because we thought that there was ample evidence in the record for Judge Gerber to have found that this was a bad faith filing. The reason here is that the admitted— No, I don't know that he did. I think he found that he expressly did not make that claim. No, I said we believe there was sufficient evidence in the record. Judge Gerber disagreed and did not reach that issue because he said there is an unenumerated cause that allows me to dismiss and requires me to dismiss. He did not reach the issue of bad faith. But what we have here is an admitted effort by the petition creditor to use the Bankruptcy Code to sell assets of a non-debtor. New York law allows them to sell the interests of the debtor. They don't like the likely result of that. But what they're doing here is trying to sell non-debtor assets. They're trying to sell the apartment out from underneath Mrs. Murray, a non-debtor, and their children. That's not something that the Bankruptcy Court was designed to allow. Is she a creditor? She's not a creditor. The Bankruptcy Court found that there's only one creditor in the case. The appellants argued, actually, that there was only a single creditor. What about his argument to the effect that this goes to the Bankruptcy Court? If the 303 procedure is followed and we overturn Judge Gerber's decision, then it goes to the Bankruptcy Court and the trustee, and it's handled in the ordinary course, and equities are taken into account. Well, I think the equities would be taken into account also under the state law. You have a situation where they are unsure whether they can sell. They claim that they cannot sell under state law. There's no guarantee that they can sell under 363H. And where you've got no other assets, no other creditors, what you're going to have here is a Chapter 7 trustee appointed. You're going to go through the process of determining whether or not a sale can be achieved under 363. Why isn't an increased price on a house, why doesn't that work to Mrs. Murray's benefit? Because it strips Mrs. Murray of her choice of where she wants to live. If they're raising their children in a home or they're putting their kids to school in the neighborhood, it strips her of her ability to choose where she lives, which is at the very heart of due process. So it's not going to be sold. I mean, that is the difference. It's not going to be sold if it's in state court because then she could live there. Well, Mr. Murray's interest could be sold. There could be speculative investors who are willing to bet that Ms. Murray would pre-decease Mr. Murray. And if that happens, they knock it out of the park. They take all of the interest, all of the interest becomes subject to the judgment lien, and they can sell the entire interest at that point. His interest. Yes. If Ms. Murray were to pre-decease him, he would take the entire interest, which would then be subject to the lien. And that's another thing that Judge Gerber recognizes, that you don't have the traditional purposes of an involuntary case here, which is to prevent dissipation of assets and to try to equalize distribution to creditors. The New York State law provides protections against dissipation of assets. It provides them the ability to assert a lien, which they have done. Mr. Murray does not dispute that if the apartment were sold, they would have to satisfy the lien. That's not disputed. They have the right to sell. No one has said that they cannot sell. They have not tried to sell. Do you agree that we have never really adequately defined what an adequate remedy is in the context? I agree that this is, I think, a case of first impression, and I think that's actually important to remember because there is no, as far as we can tell, and I don't believe appellants have found, no reported case where this method of judgment enforcement was tried prior to this or since. And I think, as the judge noted, this will become the judgment enforcement norm. If this is overturned, you're going to have situations where you've got single creditors who have a judgment against someone who is not working, who has no other assets, but has an interest in a home with his spouse. That's going to be the norm. There are going to be involuntary cases in every one of those situations. I, as a bankruptcy practitioner, would feel duty bound to recommend to any client that was a judgment creditor to consider filing an involuntary case. And your view is that under New York law, in the context of a tenancy in the entirety, it's enough that the creditor can go after the interest of the specific debtor? Yes, and in addition to that, they can go back through the other. They have already exercised the rights of recording their judgment, of taking discovery. They can continue to take judgment enforcement discovery. If Mr. Murray at some point in the future does come into some assets, they have the right to send information subpoenas and make a determination, try to attach, try to seize those assets. They still have remedies under the law. One of the arguments that Mr. Snyder is making is that immediacy has a value to creditors. They are making that argument, but there is no case that suggests that they are entitled to the best result. The cases that are cited and the cases that they cite in their brief all talk about an adequate remedy. None of them talk about a best result, and that's what they think they're entitled to. The argument that they've made is that they're entitled to the best result available under any law, and that's not the state of the law. Is it a dispositive factor that we have only one creditor here? Pardon me, Judge? Is it a dispositive factor that we have only one creditor here? It's not dispositive typically in a voluntary case, but I think it's dispositive in this case because you've only got one creditor and one asset, and that creditor already holds a lien on that single asset. So vis-a-vis that asset, they are a secured creditor. There are no assets to distribute. They do have an unsecured claim because the value of the asset is not as high as the value of their judgment, but there are no assets to distribute on account of their unsecured claim. And it's similar to some of the cases that they cited in their brief, particularly the In re Archer case where the case was dismissed because there were no assets to administer. It's not unlike that, although there is a single asset here. There are no other assets to administer on account of unsecured claims. And is that the rule that you want us to announce? What? So as long as the creditor has got an adequate lien, that's an adequate remedy? I think as long as they have—no, the remedy is what is provided in the CPLR. The CPLR provides them the right to sell debtor property, judgment debtor property. They have that right under the CPLR. There is no decision that says that they cannot sell. The New York legislator created that right. They don't like the chances of their recovery under that remedy, but that is the remedy that the New York legislator created. And they can let the lien remain in place and renew it as appropriate as required under law, and it will continue? That's right. And that was one of the things I think Judge Gerber recognizes, that there is no dissipation of assets here. They continue to have—if the case is dismissed, they continue to have a lien. That lien continues to ride along with the property. And in the New York City real estate market, I think anyone would attest to the fact that the longer you hold property, the more value it's going to have. So the longer they wait, the more value they're going to have. And if, as I indicated earlier, if, God forbid, Ms. Murray were to pre-decease Mr. Murray, they are going to benefit from that. They are going to take the entire— I want to return to my question because you've acknowledged and your adversary has acknowledged, at least with respect to determining what an adequate remedy represents or is, this is an issue of first impression. What is the rule that you want us to announce in connection with defining an adequate remedy under New York law in this case? I think that the rule is that the adequate remedy here should be the remedy that is made available by the New York legislature, which is the CPLR judgment enforcement provisions. Not simply the provision to sell property, but all— But just the fact of the provision itself, isn't it? It's not simply, Your Honor, the provision that allows them to sell. It's the entire body of judgment enforcement statutes that the legislature created in the CPLR. The Section 5200, all of the things that are available are what were created to allow a judgment creditor to enforce its judgment. My point is that the adequacy of the remedy does not turn on whether or not in a particular given situation, or in this case in particular, it's the best available remedy. That's right. They're not entitled to the best result. There is no case that suggests they're entitled to the best result. They're entitled to the remedy that is available under non-bankruptcy law. Mr. Snyder. Thank you. Thank you. Judge Walker, I would counsel my clients to do exactly what this debtor did. He sold his yacht, his helicopter, his luxury car, transferred all his cash to an offshore police trust that we can't touch, then in a subsequent proceeding, filed statements saying, I have no assets but my interest in the house. Go pound sand. So if someone comes into my office, I suggest to them that they strip themselves of all their assets, put their assets in a multi-million dollar house, and then say to your creditor, you have an adequate remedy. Go to state court, maybe you'll get something. Adequate remedy under the law is the best remedy. Not only in our laws in general, but the bankruptcy code in particular. The whole idea of a U.S. trustee system and a distribution of assets is to allow creditors their best possible result. It would be silly and pyrrhic to say that we have a result, we can go to New York law, know that it can't be sold because the non-debtor spouse cannot be removed from the premises. We have an adequate remedy of law. Objectively, in state court, it's worthless. Subjectively, based on what we can receive in bankruptcy court, it's worthless. The only adequate remedy is the best remedy. It's the remedy that allows the creditors to monetize their return consistent with the bankruptcy code. Adequacy of law is subject to de novo review. It is a legal issue. And the bankruptcy court was focusing on the non-debtor spouse and the children. But more importantly, after what the debtor did here to say that us, following the statute, acted in bad faith is the ultimate in hypocrisy here. On a de novo review, the court should enter an order for relief and allow the process as codified in the bankruptcy code to continue. Thank you. Thank you very much. We'll reserve decision and we'll hear argument next in United States v. Singh, 17905.